Good morning. Good morning, and may it please the court, my name is Jim Jellison and I represent Officer Mike Miller, Sergeant Ryan McCarthy, and Officers Cummings, Preston, Torres, and White. This case arises out of a deployment of a canine on October 19th, 2019. Before you get too far into your argument, I want to ask you if you have seen a case that just came out from our court. I think it was probably posted for publication today, and it's Zachary Rosenbaum v. City of San Jose, which is a case that is, interestingly, very similar in its facts to this case. Have you seen this case? Mike Miller Well, to prepare for an oral argument, I typically do two things. I typically do update to see if there's any new cases, and I typically look and see how the three of you have decided qualified immunity cases. I have not seen that one, so if it came out today, it missed me. Judge Cardone Okay. No, I'm asking because I have some questions that I intend to ask, but I won't ask you questions about this case if you haven't read it because that seems unfair. But proceed. Sorry about that. My comments would be errant if I have not read it, and I appreciate that. Is it a district court case? Mike Miller No, it's a case from our court. Judge Cardone From the Ninth Circuit? Mike Miller Yes, and it's a published decision relating to qualified immunity for an officer that deployed a dog that then a canine that bit the plaintiff in a 1983 action. So very similar facts. Judge Cardone Okay, and so I will proceed as I intended. I do plan on taking some extra time, and I'll try to do that when I see it on the clock. Mike Miller How much time would you like to reserve? Judge Cardone Three to four minutes. Mike Miller Okay. Judge Cardone Thank you, Your Honor. What police officers do, as I reflect on it, is very unique. It's like nothing that any of us do. They get a the community expects them to respond to that call, and then they insert themselves in a situation that they have little understanding of. And so they have to assess that situation based on what they've heard about it and what they've observed about it. And the Ninth Circuit has recognized that when it comes to the utilization of canines in law enforcement. First of all, as a broad proposition, the courts, including the Ninth Circuit, encourage the use of canines in law enforcement. And the reason is simple, because utilization of canines serve to protect the lives of human officers under the right circumstances. Additionally, the courts recognize, and I'll refer to the Miller case in particular, I'll refer to the Lowry case in particular, that officers are confronted with a situation that might not at the end of the day turn out to be what is perceived. So in the Lowry situation, you had somebody working in an office who was sleeping off a night of drinking and triggered an alarm. But the Ninth Circuit recognized that this looks like a burglary. This looks like a dangerous situation. We're going to deploy a canine because this could be somebody who's waiting for us to do us harm. Is your challenge to the, with respect to Officer Miller, are you challenging both the initial deployment of Toby into the shed or the command to bite Mr. Rock after Toby entered the shed? Neither. The court, the district court, granted qualified immunity to Officer Miller regarding the deployment of Toby with the purpose of locating, biting, and retrieving Mr. Rock, who was presumably, but not known for sure, to be inside the shed. And even the submittals by plaintiff's counsel make clear that there is no judgment on that grant of qualified immunity from which to appeal. So that part of the case is off the table. The only question with Miller is whether or not the duration of the bite violated constitutional parameters. And in the Ninth Circuit, case law is pretty clear that there's really two categories that apply. The first one comes out of Mendoza v. Block. Really wasn't even part of the facts, but it makes sense. If you have somebody handcuffed, if you have them controlled, and they are no longer fighting, you can't stick your canine on them. And of course, that's not a very remarkable proposition, because if somebody's handcuffed and controlled and they're not fighting back, then you shouldn't be doing any gratuitous use of force. There was a morphing of that concept. Mr. Jellison, not to make this a spoiler for you, but the Rosenbaum case that I was referring to earlier, that case essentially takes the position that you're arguing right now, which is that it is both constitutes excessive force and it was clearly established that having a canine continue to bite a suspect after they are not presenting any further threat or have surrendered, I think, you know, very, very similarly sort of makes the point that you're making. So I'm wondering if maybe you want to turn to your arguments with respect to, I don't know, I'm particularly interested in hearing your arguments with respect to the failure to intervene and the participation, the integral participation of the passive officers. Very well, Your Honor. I know it's my time. I'd like to take just at least a couple seconds to talk about Miller, because I don't know the case that you're referring to. But one thing that I will point out is that whatever case came out today did not exist in October of 2019 and would not have guided Officer Miller's decision making. So what would have guided the decision making would be the Mendoza proposition I talked about before and the morphing and that is if somebody has, and this is the words of the Ninth Circuit, fully surrendered and are under the control of police officers. I mean, just to interrupt on that. So the focus here is a 50-page district court opinion. It's very detailed, and most of it you're accepting. But when you get to the Watkins claim, why is the district court wrong saying that there are issues of fact as to whether or not Dylan Rock, when he grabs the leash, was either resisting or just trying to protect himself, one, and then the district court points out that Toby is still engaged in biting even though Dylan has then been flipped over, surrounded by officers. One of them has a taser aimed at him. So it does look like there are fact questions as to whether there's an effect of surrender. Isn't that the logic of the Watkins claim here? Well, the Watkins case, I believe, is pre-Scott versus Harris, but I don't know that the Watkins  Right, but even looking at the video here, we know he did grab the leash, and that could be interpreted one of two ways. Isn't that what the district court said? Well, the district court said that, but that's incorrect. What you're, and the reason I'm saying it's incorrect, and the answer to your question is a couple of things. First of all, there's no fact dispute because under Scott versus Harris, we can look at this video from every angle, slowed down, enhanced, and we can tell what happened, the timeline, and what Dylan Rock was doing during that time. Even the plaintiff's counsel in their briefs mentioned that the three officers, White, Cummings, and Preston, were hands-on with Rock the entire time before they got him into handcuffs. And the next part of that is, okay, so what is Dylan Rock thinking? The officers don't know what Dylan Rock is thinking. No, it's not thinking. It's, I think the district court is very careful to say, let's accept the video. You have an arrestee that is face down, hands visible, surrounded by officers. Is your rule that, no, he actually has to be cuffed, but until he's physically cuffed, the dog can stay engaged? Is that your position? Well, I've got to accept the other cases that talk about him fully surrendering, again, the language of the Ninth Circuit, and being under control. And what we see in the videos is not somebody who is either fully surrendered verbally or by their actions or is under control. And we were, just to be clear, though, we were talking about a biting situation that was happening for 40 seconds, correct? Actually, I disagree with that. I think when we look at the video, the bite, we hear Dylan in the shed yell. But that was the finding of the court, correct? I don't recall if that was the finding of the court. Let's assume that that was the finding of the court. Was the court wrong about that? If the court didn't count the seconds in the video correctly, then the court would be wrong. But I think that what's more important than the time is what's happening in that time. And in that time, Dylan Rock has got his right hand under him. He's reaching over from under him. He's grabbing Toby's leash. He's commanded at least five times to let go of that leash. So how long was it? How long was it? I guess I take your statements to mean that it was less than that time? Yes. If you look at the video, Your Honor, from the time that it appears that Toby goes on biting the shed. Counsel, I've looked at that video many times. To the time that Mike Miller orders the bite, Toby to be released from the bite, is 30 seconds. Maybe 31 seconds. And so if we're talking about Officer Miller's actions, that's what we have to look at. And so I look at cases like Hernandez, Lowry, and Miller. We don't have to show the clearly established law, but I think cases like that would put every reasonable police officer in this situation on notice that what happened in this case was not constitutionally prescribed. And that's the standard now. And that's why the Watkins case isn't as good as I think the district court thought it to be or as plaintiff's counsel believes it to be. Because in that case, there was no finding, there was no holding that the Fourth Amendment had been violated. Merely that a jury could come to that conclusion. And Casella, U.S. Supreme Court. And qualified immunity just because a jury might find that something is reasonable or unreasonable during a trial. And qualified immunity is more so that we have to rely for clearly established law on cases that have actually held that conduct that is very, very similar to what we're seeing here has been declared unconstitutional or in violation of the Fourth Amendment. We don't have that. Dillon Rock is not fully surrendering. You can clearly see that on the video. Well, I guess you're saying that, but so then we are to reject the district court's finding that, quote, he was screaming and recoiling from pain? Well, he was screaming, recoiling. I think we can hear that on the video. He's also grabbing the leash. We can see that on the video. But he's not fully surrendering. And the officers don't have control of him. In fact, they're fighting to get control of his right arm so that they can apply handcuffs. And only when, at the point where it's clear that Toby has the left arm and the officers who are struggling with Rock have the right arm, and you can see that it's out to the side, Miller then calls off the bite. Miller calls off the bite. At that point in time, two seconds later, Toby is off bite. Counsel, I see that you have two and a half minutes. Do you want to reserve the rest of your time? I'm going to reserve that. Thank you, Your Honor. Good morning. If it pleases the court, Charles Tony Picuto on behalf of appellee and cross I'm familiar with it. I watched the oral argument. I just looked up the opinion. It looks like it affirmed. And I think that pretty much is conclusive with respect to what this Court should do on the claim against Miller with respect to duration and encouragement. I can just address a couple of briefs. With respect to what? Duration and encouragement. Oh, duration. Yeah. I'll just address a few things on that because I don't think it's as complex. Was Miller both the commanding officer and the canine handler? See, it's interesting in that department, Miller is the canine handler. And the rule is they don't have to have any permission to use a dog from any supervising officer. But the two higher ranking officers at the scene were Corporal Cummings and Sergeant McCarthy. And I'm just going to address a couple of things to differentiate Watkins just so the court has it, if they want to include it in the opinion. What makes Watkins distinguishable is that in Watkins, the officer's statement as to why he didn't call the dog off the bite is because he didn't know if he was armed because he couldn't see his hands. In this particular case, Miller said he could see his hands as soon as he came out of the shed. That's a big distinction. The district court actually, on page 19 of its order, says that three seconds into after Toby's entered the shed, within three seconds, they can determine, the officers can determine that Mr. Rock's hands don't have a weapon in them. So isn't it even earlier than what you're saying? Well, I know Cummings, both Cummings, Cummings was at a better vantage point. But as soon as the dog drags Miller out of the, excuse me, Rock out of the shed, Miller concedes that he can see he has nothing in his hands. And I want to just clarify one thing. In our underlying response to the motion for summary judgment, we cited it to Exhibit 8, but it was actually Exhibit 7, which is Miller's body-worn camera. Because we do have the video, when in the video would you say that it's indisputable that the police had complete control over? I would say immediately. But you have a point in terms of those 40 seconds. Three or four seconds into the bite, once, because both Cummings and Miller concede that when Toby was on the bite, Toby had complete control of Dylan Rock. And I mean, the video is pretty compelling. You can see he's not resisting. He's screaming for his life. He's agonizing in pain. And what also makes this different from Watkins is you have multiple officers hands-on, applying force. And what also makes this different from Watkins is the dog bite in this particular case was on his left arm, controlling more of his upper body, where in Watkins it was on his ankle. And so the reason why in Watkins he couldn't show his hands would be more, I guess, suspect, if you could say, as opposed to a dog that's attacking your upper body. And if you really break down the video and watch it closely, you'll see at one point the reason why he can't give his right hand is because Preston, Officer Preston, is actually grabbing it from underneath him and trying to secure it that way. Because Cummings is failing to do anything other than pull out his taser and stick it into Dylan Rock's back. So now we have two officers hands-on. A third one right there also hands-on with a taser in his back. A dog for an extended duration. Multiple cover officers. So you accept just that the rule is, the Watkins rule is, once surrendered or functionally captured, at that point the order to release has got to be given? I would say that the rule for Watkins, if someone's not resisting essentially, you need to release the dog. But of course, in part, the argument against you is that we do see resistance in terms of him grabbing the leash. That's not resistance. It's a reaction to recoiling, just like they cited in Wattins. But imagine no dog. Imagine a police circumstance. If an arrestee is grabbing at one of the officers, that would still qualify as resistance, correct? So with respect to the grab of the lead, if you want to break it down that way, you can even give any credence to that argument. Yes. It was maybe four or five seconds. And then he's off the leash. They have his arm. They're yelling at him about the right arm. And Toby is still latched on. Still latched on. So that's the distinctions in the duration encouragement context. I don't think I had anything else I want to add on that. But I really want to address the two more complicated issues in this opinion, which is the integral participation and failure to intervene context. And also, can I just ask you, are you challenging the initial deployment of Toby into the shed without warning or the command to bite after determining that he was? For efficiency, we wanted to bring it up on appeal. We tried to get it certified and have judgment entered as to it. But the district court didn't do it. So what's your answer? We did. We absolutely did. Are appealing whether or not the initial deployment of the dog was excessive? It's not before the court now, but we plan to when final judgment is entered. I thought it was before the court. No, it's not. So we tried to get it here, but we were unable to. So with respect to integral participation, now the flaw in the district court's opinion is that there was no individualized analysis into each officer's conduct. And that is per this court's previous order in Sims v. Brown and also Demby v. Angstrom. In Sims v. Brown, this court elected to undertake that analysis to streamline the proceedings. And in Demby v. Angstrom, they sent it back down for the court to do it on remand. Here, the district court completely circumvented that entire process. They didn't do any analysis into what each individual officer did to be integral participants in the constitutional violation for the duration and encouragement. And we think that's a flaw. And we did that analysis. It's not like we, by happenstance, just filed pleadings. We actually looked at it, considered it, and we did not oppose their motion for summary judgment with respect to Sergeant McCarthy. What is your authority, the best authority that you have, that the law is clearly established that this has somehow caused them not to have qualified immunity? Well, I guess the test is crystallized in Peck v. Montoya, right? I believe that's the case. And it says the two ways you can have integral participation is, one, you can acquiesce in the underlying unconstitutional misconduct, and you also consent to a series of events that causes it, right? But the two cases that are most similar for the proposition that this would constitute it would be Blankenhorn v. City of Orange and Martinez v. City of Pittsburgh. But there's no nicer case in the context of a dog seizure. That's correct. How would these officers be on notice that they had to intervene? Well, this isn't with intervening. This is with integral participation. Well, the distinction between being a bystander or being an active participant. They were active participants. They intricately participated in the constitutional violation of the duration encouragement. Some officers more than others. Is that what those cases say, though? Well, what those cases say is there doesn't need to be an overt plan, that we're going to go in and allow this dog to bite his arm for 30 or 40 seconds. That's what those cases say. Do you read and study the case cited by Mr. Miller, Hughes v. Rodriguez? I haven't studied that case, Your Honor. That's a 2022 case that looks very similar. Specifically says that it's not clearly established law in the Ninth Circuit in the, quote, chaos of a dog arrest, particularly when you have one officer who's a canine handler. The concept that other officers would sort of intervene as the dog that he's got on his leash. Well, I would say that in this particular case, which makes it fascinating, is one of the officers, White, who was there, was a canine handler. He's the one who removed the dog from the bite. The other officers were all trained to intervene. But he did on Miller's instruction. Correct. So that's sort of the logic that I read into this decision that's cited, but not for this proposition. But it seems to explore the fact that when you have a canine seizure, that is a unique moment where a canine handler has specific control of the leash, as Miller did. And then he releases the dog. The proposition you're asking us to say is that other officers that are not in command of the leash have to somehow intervene. That's exactly what I'm saying. And what's your Ninth Circuit case law that says they're on notice that they've got to intervene? But then we're going to switch towards the failure to intervene theory, which I'm happy to do. But I was trying to address the integral participant theory, because the integral participant theory looks at each officer's individual conduct, and they're all applying force when the duration, encouragement, and the bite is going. If you want to go and shift it there, I'm happy. Let's not shift quickly. Give me a case that involves a dog seizure in the integral participant. That doctrine emerged from the Fifth Circuit. I'm aware, and I'm aware you're visiting from there today. I'm glad you're on the panel. Can you think of any circuit that has applied that doctrine in the context of a dog seizure? I'm not aware of a case that does that. So it would seem to me, but push back, that these officers wouldn't be on notice. So then we're making a carve out with respect to dog bite cases and really complicating a body of law of what we'd be doing. And I don't really agree that an officer doesn't know enough to not be an integral participant in that situation. And what muddies it a little bit is because when they're actively participating, they're not failing to intervene, and it kind of marries the two issues. But here, they're all applying force. A lot of the officers there are applying force, okay? They're agreeing in the duration, encouragement. They're not trying to stop it. But again, that's a separate issue. We're looking at each officer's individual involvement. And this is, if we're holding Miller responsible for this long duration encouragement, this excessive bite, and all these other officers are there contributing to it and exhibiting force, then they should be held as integral participants. These aren't cases where their mere bystanders cover officers, like the Peck versus Peck case. That was, you know, a sudden exchange of gunfire. There's very little they can do in that circumstance, and they're just standing guard. Here, they're actually participating in the use of force with the dog. That's the distinction. And let's switch to the failure to intervene because I don't have much time. It's super important. Number one, it needs to be cleaned up because Penaloza created a lot of confusion. That's an unpublished opinion from this court. And what it essentially said is that there's no case telling an officer when they need to intercede. And I'm not addressing that case particularly for this case because Penaloza was post-incident. Penaloza was a 2020 opinion. This was in 2019. So if they want to argue that Penaloza somehow muddied the waters and made it confusing as to when someone needed to intervene, that's not the case. In 2019, the law was Cunningham versus Gates, and it was at the first realistic opportunity, an officer needs to intervene in unconstitutional conduct or an excessive use of force. But Penaloza, what it did is now confuse all these district courts. So much so that in the district court's underlying opinion here, they said if they didn't follow Penaloza, it would be a reversible error. And if you look at the case we cited out of Oregon, it also confused the magistrate judge. In that case, it's Segura versus Miller. It confused the magistrate judge to actually enter findings and recommendations about the failure to intervene. And the district court judge didn't embrace those findings. They didn't accept them. They said, no, Penaloza is not the law. The law has been well established for a long time in the Ninth Circuit, and that is Cunningham versus Gates. It's the first realistic opportunity. Now, we're not citing Segura versus Miller as precedential authority. We know it's not. But the analysis is spot on. It looks at Penaloza. It looks at Cunningham versus Gates. It looks at the cases that have discussed failure to intervene. And it said the law has always been at the first realistic opportunity. And if you think about it, it makes perfect sense, because if officers are intervening when they can at the first realistic opportunity, maybe this case isn't here, at least not in the duration encouragement theory. If any of those officers intervened in the first couple seconds, told Miller, hey, call the dog off, he's unarmed, anything, we're not here. It protects suspects. It protects citizens. It protects the police. It protects government entities from litigation. It protects the court system from having claims go up. So the failure to intervene doctrine is so important, we need to clarify Penaloza. This court should issue an opinion that reinforces what they want to do with respect to the failure to intervene doctrine. It will be precedential if it's published, unlike Penaloza. It will actually clean up what's confusing the district courts now. I'm happy to answer more questions if the court would like. Any additional questions? No, thank you. All right. Thank you. Well, I'll start with the failure to intervene or integral participation. And I sort of hearken back to the Boyd case. The Boyd case was a case where flashbangs were going to be deployed, but the group actually met and talked about it before the search warrant was being executed. And the point in Boyd is, we all knew that they were going to introduce flashbangs into a house, and they didn't know whether or not there were innocent people there. And somebody should have said something during the briefing. Hey, maybe that's a bad idea. This isn't that case. And Judge Higginson, you pointed out the obvious. And that is, this is now a fast-moving situation. Is there any case law that would instruct a reasonable officer that now, hey, I've got to intervene, and I've got to stop this operation? And that's a dangerous proposition. Because in a law enforcement action, can you imagine one other law enforcement officer saying to another, you know what? I just think this is too much. I'm not going to help you anymore. Or I'm even going to stop you. If they're wrong about it, their career is on the line. Now, there may be some things that are quite obvious. My example before, you don't hit somebody who's already handcuffed, controlled, and they're not fighting back. But this isn't that situation. Could you respond just quickly, factually? Because when I'm asking opposing counsel the moment at which release would have been appropriate to order, the answer was three to four seconds after they entered the shed. What, to your recollection, was happening three to four seconds after they entered the shed? Three to four seconds after they entered the shed, he was pulled out and Dillon Already out the door. And Dillon Rock was brought out the door. And he's grabbing the leash and he's not giving up his right hand. And the three officers are trying to get that right hand so they can handcuff him. When they finally get access to that right hand, then the dog is called off before there's even handcuffing. And where we've already determined that clearly established law is not violated by ordering the deployment to bite, hold, and locate. How do we say that a 32 second event like this violates clearly established law? And show me that clearly established law under facts like this, because I don't see it. I believe Penalosa does apply. And I believe we have Miller here. But as to the other officers, if there's not clearly established law telling them they have to intervene, then they are entitled to qualified immunity. And the district court was correct. Let's see. Any additional questions? All right. Thank you, counsel. Thank you both for your arguments today. This matter will be submitted.
judges: Higginson, MENDOZA, DESAI